UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MULTI-JUICE, S.A., SNAPPLE HELLAS, S.A.,
and NEW AGE BEVERAGES HELLAS,

                           Plaintiffs,                02 Civ. 4635 (RPP)

             - against -                      **AMENDED**
                                         **OPINION AND ORDER**

SNAPPLE BEVERAGE CORP., and
MISTIC BRANDS, INC.,

                           Defendants.
------------------------------------------------------------------X
SNAPPLE BEVERAGE CORP., and
MISTIC BRANDS, INC.,

                           Counterclaim Plaintiffs,

             - against -

MULTI-JUICE, S.A., NEW AGE BEVERAGE
HELLAS, ARTHUR TAVANTZIS and
NAOUM TAVANTZIS,

                           Counterclaim Defendants.
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       By motion dated September 30, 2005, Defendant/Counterclaim Plaintiff Snapple Beverage Corp. ("Snapple") moved for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to dismiss the First Cause of Action of Plaintiff Multi-Juice, S.A. ("Multi-Juice") for breach of an oral distribution agreement between Snapple and Multi-Juice. By Opinion and Order dated June 1, 2006, the Court dismissed Plaintiffs' First Cause of Action for breach of an oral distribution agreement. By motion filed June 14, 2006, Plaintiff Multi-Juice moved for leave to file a First Amended Complaint pursuant to Fed. R. Civ. P. 15(a).

**BACKGROUND**

The background to this controversy is set forth in prior opinions of this Court, Multi-Juice, S.A. v. Snapple Bev. Corp., No. 02 Civ. 4635 (RPP), 2003 U.S. Dist. LEXIS 7040 (S.D.N.Y. Apr. 24, 2003), and Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928 (S.D.N.Y. 2006), familiarity with which are assumed.

Plaintiffs argued in their Memorandum of Law in Opposition to Defendant Snapple's Motion for Partial Summary Judgment that if the Court found that Plaintiffs could not recover on their claim of an oral distribution agreement, Defendant is liable under the doctrine of promissory estoppel because Naoum and Arthur Tavantzis ("the Tavantzises") traveled to Greece and expended substantial sums in express, detrimental reliance on specific oral promises of a distribution agreement. In its Opinion and Order of June 1, 2006, the Court stated:

> Because the [promissory estoppel] claim is raised in Plaintiffs' answering papers . . . the Court could allow it even if discovery has long been closed if Plaintiffs can demonstrate that such a claim is appropriate on the facts of this case and if they have provided specific evidence of such expenditures to Defendant. If Plaintiffs wish to pursue this claim, they must move to amend . . ., setting forth in a non-conclusory manner their claim for promissory estoppel together with a supporting memorandum demonstrating that there is valid legal support for making the claim under the circumstances presented here.

Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928, at *38. Accordingly, Plaintiffs filed a motion to amend their Complaint to include a claim of promissory estoppel; they also added a claim of part performance.

**Standard of Review**

Plaintiffs request leave of this Court to amend their Complaint pursuant to Fed. R. Civ. P. 15(a), which states that leave to amend "shall be freely given when justice so requires." The United States Supreme Court stated:

> [T]his mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

Forman v. Davis, 371 U.S. 178, 182 (U.S. 1962). Here, Defendant Snapple does not claim undue delay, bad faith, or dilatory motive by Plaintiffs or undue prejudice to Defendant. However, Defendant claims that Plaintiffs' purported promissory estoppel claim is futile because they fail to plead a prima facie case and because Plaintiffs' claim of breach of an oral contract was barred by the Statute of Frauds and Plaintiffs' alleged injuries are not "unconscionable." Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File a First Amended Complaint ("Def. Mem. in Opp."). Based on the evidence before the Court, Plaintiffs' motion for leave to amend their Complaint is denied because Plaintiffs' promissory estoppel claim is futile.

**DISCUSSION**

**Promissory Estoppel Claim**

In New York, promissory estoppel has three elements: "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance."

Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.3d 69, 73 (2d Cir. 1989) (internal citations omitted).

In its proposed First Amended Complaint ("FAC"), Multi-Juice alleges that in the last week of March 1997, the Tavantzises learned that Snapple, then a subsidiary of Quaker Oats, Inc. ("Quaker"), had been acquired by Triarc Companies.[1]  See FAC ¶¶ 16, 19.  The Tavantzises were at that time contacted by Donna Bimbo, a manager of international business for Mistic Brands, Inc.[2] ("Mistic") with whom the Tavantzises had entered into an agreement to distribute Mistic beverages in Greece.  See id. ¶¶ 18-19; Tr. at 77.  Ms. Bimbo suggested that the Tavantzises might want to distribute Snapple in Greece.  FAC ¶ 19.  The FAC then alleges that in or about April 1997, the Tavantzises met Ms. Bimbo for a series of dinners at restaurants, including the Union Square Café in Manhattan, to discuss the possible distributorship.  Id. ¶ 20.

In these meetings, Plaintiffs allege that Ms. Bimbo promised that the problems the Tavantzises' company, Snapple Hellas ("Hellas"), had with Quaker's distribution of Snapple, such as Quaker's requirement that the Tavantzises order larger quantities than Hellas needed, Quaker's failure to timely deliver products in the flavors ordered, and Quaker's shipment of products that Hellas had not ordered, would not recur if the Tavantzises were distributors of Snapple for Triarc.  Id. ¶ 21.  The FAC states that:

> Specifically, Ms. Bimbo represented that if the Tavantzises dropped the Hellas/Quaker action and resumed distributing Snapple:
>     a.  Multi-Juice and New Age would be the exclusive distributors in the country of Greece of Snapple and Mistic products, respectively;

---

[1] At oral argument on January 19, 2006, Multi-Juice stated that Snapple was acquired by Triarc in May 1997.  Hearing Transcript ("Tr.") at 93.
[2] Mistic Brands, Inc. was a subsidiary of Triarc Companies.

4

> b. Snapple would supply plaintiff Multi-Juice with Snapple products on a timely basis in the quantities ordered, with no minimum order requirements; and
> c. Snapple would provide marketing support, advertising credits, and point-of-purchase promotional materials to support Multi-Juice's launch of Snapple.

Id.

Thereafter, at a mediation conference on July 30, 1997, Snapple, Snapple Hellas, and the Tavantzises settled the Snapple Hellas/Quaker action for consideration paid to Snapple Hellas.  Id. ¶ 22.  The settlement agreement provided that the parties would negotiate in good faith toward a new distribution agreement under which the Tavantzises would distribute Snapple in the country of Greece through a new corporation formed for that purpose.  Id.  The Hellas Settlement Agreement was dated August 1997 and signed by the Tavantzises, as well as Snapple Hellas, Snapple, and the Quaker Oats Company.  Two of its terms were:

> 4. <u>Distribution Agreement</u>.  Hellas and Snapple shall negotiate in good faith towards entering into a 3-5 year written agreement under which Snapple would convey to Hellas the exclusive right during the term of that agreement to distribute Snapple beverages in Greece.  Except to the extent permitted by the distribution agreement contemplated by this paragraph, Hellas shall not use the word "Snapple" in any way as part of its business, including as part of its corporate name.
>
> * * *
>
> 13. <u>Entire Agreement</u>.  This Agreement *constitutes the entire agreement and understanding* between the parties hereto with respect to the subject matter contained herein.

Snapple's Motion for Partial Summary Judgment, Exhibit ("Ex.") 7, ¶¶ 4, 13 (emphasis added).

As in their dismissed claim of an oral distribution agreement, Plaintiffs rely in their promissory estoppel claim on the above alleged representations made by Ms. Bimbo

5

during dinners with the Tavantzises in April 1997. However, as the Court stated in its June 1, 2006 Opinion and Order, these claims are contrary to "the settlement agreement provisions – that the parties would negotiate in good faith towards entering into a 3-5 year written distribution agreement and that the agreement constituted the entire agreement and understanding between the parties." See Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928, at *25.

In addition, as noted in the Court's Opinion, "subsequent to the settlement agreement, Louis Burke, Esq., who was authorized to negotiate the distribution agreements by the Tavantzises and Multi-Juice, exchanged seven written drafts of an exclusive distributorship agreement over a period from October 1997 through April 1998 between Snapple and a corporation to be named later." Id. at *26.[3] A review of Mr. Burke's exchange of drafts of the written distribution agreement shows that none of the drafts contains or proposes terms similar to the promises Plaintiffs are asserting in the FAC and that the pertinent terms are dissimilar. Thus, the draft written agreements disprove Plaintiffs' claims, since Plaintiffs would have sought to include those promises as terms of the draft distribution agreements if Plaintiffs were relying upon them. Not only did the Tavantzises disclaim any prior "agreement" or "understanding" in the Hellas settlement agreement, but the alleged promises made by Donna Bimbo before the settlement agreement are not consistent with the terms of the draft distribution agreements that passed between the parties thereafter. Therefore, no reasonable jury could find that the alleged pre-settlement-agreement promises constitute clear and

---

[3] All of the draft agreements were submitted as Exhibits in the summary judgment motion and came from Mr. Burke's files. Tr. at 57.

unambiguous promises upon which the Plaintiffs reasonably and foreseeably relied.  See

Arcadian Phosphates, 884 F.3d at 73.

The FAC also alleges several oral promises that occurred after the settlement agreement:

a) Shortly after the settlement, Ms. Bimbo told Arthur Tavantzis that "things would be completely different under Triarc and the same problems would not recur now that she was in charge, and that she would take care of everything to help the Tavantzises successfully re-launch Snapple in Greece."  FAC ¶ 23.

b) In mid-August 1997, Naoum Tavantzis visited Ms. Bimbo at her office at Snapple headquarters in White Plains and was told by Ms. Bimbo that she was engaging a new bottler or co-packer to produce Snapple for the Greek market and would promptly obtain the bottler.  Id. ¶¶ 24-28.[4]

c) During August, Ms. Bimbo assured Arthur Tavantzis that Snapple would deliver products on time, guaranteeing the products would be delivered by late January 1998, in time for the February 1998 Greek beverage show.  Id. ¶ 30.

d) In early January 1998, Ms. Bimbo advised Naoum Tavantzis that she would have a bottler in place by the end of January 1998.  Id. ¶ 31.

The first promise alleged by Plaintiffs (see paragraph a above) is vague and indefinite and therefore does not support a promissory estoppel claim.  With respect to the other promises about the bottler (see paragraphs b, c, and d above), Plaintiffs make no claim in their FAC as to when the bottler was actually brought on board and do not state

---

[4] Plaintiffs allege that at this meeting, Ms. Bimbo and Naoum Tavantzis also discussed delaying the launch of Mistic until after the launch of Snapple.  FAC ¶ 29.  This is inconsistent with the Plaintiffs' evidence on the summary judgment motions that the decision not to launch Mistic was made in May 1997.  See Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928, at *46 ¶ 5.

that these alleged representations were not accurate when made or were not carried out. Furthermore, in March of 1998, when Multi-Juice placed its initial order for Snapple products, Multi-Juice was aware of the situation with the bottler and determined to go ahead with their order[5] "as if a written exclusive agreement for the distribution of Snapple product in Greece had been executed among them," Complaint ¶ 28, thereby foregoing any claim for damages caused by detrimental reliance on promises about the bottler's availability.[6] FAC ¶ 36. Thus, any detrimental reliance on these promises by Plaintiffs was relinquished when Multi-Juice decided to proceed with the distributorship and act as the distributor of Snapple in Greece for one and a half years.

Plaintiffs also have not demonstrated that it would be unconscionable to deny them relief on their promissory estoppel claim. In its Opinion and Order of June 1, 2006, the Court held that Plaintiffs' claim of a five-year oral distribution agreement violated New York's Statute of Frauds. See Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928, at *30-37. Because Plaintiffs' promissory estoppel claim seeks to circumvent the Statute of Frauds, Plaintiffs must demonstrate that it would be unconscionable to deny it relief. As the Second Circuit has held:

> The strongly held public policy reflected in New York's Statute of Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result. For this reason, the doctrine of promissory estoppel is properly reserved for the limited class of cases where 'the circumstances are such as to

---

[5] Multi-Juice received Snapple products from this order sometime in April 1998, as evidenced by their statement in the FAC that June 3, 1998 was "less than two months after Multi-Juice received its first massive shipment of products." FAC ¶ 39.

[6] The draft distribution agreements that were being negotiated between Mr. Burke and Snapple have "Targeted Annual Minimum Purchases." See, e.g., Snapple's Motion for Partial Summary Judgment, Ex. 12 at Bates #P01318; Ex. 13 at Bates #P00884; Ex. 14 at P00792; and Ex. 15 at P00815. Without evidence to the contrary, these targeted purchases also indicate to the Court that Multi-Juice was not concerned about Snapple's ability to obtain a bottler, since Multi-Juice was agreeing to targeted annual minimum purchases for which a bottler would be required in order for Multi-Juice to carry out its obligations as a distributor.

8

>render it unconscionable to deny' the promise upon which the plaintiff has relief.

Philo Smith & Co. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977), quoting 3 Williston on Contracts § 533A, at 801 (3d ed. 1960).  Thus, in order to state a claim for promissory estoppel, Plaintiffs must show an unconscionable injury, which is defined as an injury "beyond that which flows naturally from the non-performance of the unenforceable agreement."  Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 826 (2d Cir. 1994).

>Here, Plaintiffs claim that from August 1997 through November 1999,
>
>Multi-Juice and the Tavantzises expended approximately $360,000 in cash out-of-pocket expenditures in reasonable and foreseeable reliance on the fact that they had been granted an exclusive distributorship of Snapple and Mistic products, on Snapple's continued acknowledgment of their exclusive right to distribute Snapple in Greece . . .  and on Snapple's and Mistic's clear and unambiguous promises . . . In addition . . . Multi-Juice expended approximately an additional $30,000 during the period of its operations in Greece.  Additionally, the Tavantzises had earned between $50,000 and $100,000 per year apiece at relevant times during the previous ten years.  Therefore, a conservative estimate of the value of the approximately two years of time and effort that Arthur and Naoum Tavantzis expended in connection with establishing their beverage distribution is $300,000.  The Tavantzis also formed Multi-Juice, leased a warehouse, hired personnel, purchased capital equipment, and acted as Snapple's agent in connection with certain legal proceedings in Greece . . . in reasonable and foreseeable reliance on Snapple's promises that Multi-Juice was Snapple's exclusive distributor in Greece.

FAC ¶ 34.  As stated in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Leave to File a First Amended Complaint ("Pl. Mem."), "[t]he new causes of action for promissory estoppel and part performance have a nexus with the previous breach of contract claim, in that they [are] based *on the same or similar misrepresentations by Snapple and on the same losses and other damages arising from Snapple's [sic] reasonable and foreseeable reliance on Snapple's express promises*.  Pl. Mem. at 5

9

(emphasis added).  Therefore, Plaintiffs acknowledge that the FAC does not plead that they have suffered unconscionable injury.

Moreover, Plaintiffs have offered no evidence documenting that they have provided discovery to Defendants of their alleged expenditures, as required by this Court's Opinion of June 1, 2006 authorizing Plaintiffs to move to amend.  See Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928, at *38.  Defendant states that discovery proof of such expenditures has not been provided to them.  Def. Mem. in Opp. at 9 n.2.  Plaintiffs offer no document discovery evidence but only an affidavit from Evangelia Tavantzis, which contains the inadmissible hearsay statement that she is "advised that all of these documents were produced to defendants by Multi-Juice's former counsel Louis Burke in connection with this litigation . . . ."  See Evangelia Tavantzis Affidavit ¶ 5.

In any event, Plaintiffs have acknowledged that these expenditures "have a nexus with the previous breach of contract claim, in that they [are] based on the same or similar misrepresentations by Snapple and on the same losses and other damages" as the oral distribution agreement Plaintiffs assert they had with Snapple.  Thus, Plaintiffs have not demonstrated an unconscionable injury, i.e. "injury beyond that which flows naturally from the non-performance of the unenforceable agreement."  Merex, 29 F.3d at 826.

Accordingly, Plaintiffs' Motion for Leave to File a First Amended Complaint is denied, since discovery has long been completed in this four-year-old case and permitting the filing of a claim for promissory estoppel would be futile.

**Part Performance Claim**

Plaintiff Multi-Juice's FAC also contains a cause of action for part performance. The Court allowed Plaintiffs to move to amend their Complaint to include a promissory estoppel claim if they could provide valid legal and factual support because promissory estoppel was raised in Plaintiff's answering papers and at oral argument.  See Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928, at *38.  However, discovery has been closed for nine months, and the Court's grant of leave to file a motion to amend was limited to a claim for promissory estoppel and did not allow for Plaintiffs to assert other new causes of action.  Furthermore, a claim for partial performance is a limited exception to the Statute of Frauds, which "may be invoked only if [Plaintiffs'] actions can be characterized as unequivocally referable to the agreement alleged."  Blue Ridge Invs., LLC v. Anderson-Tully Co., 2005 WL 44382, at *4 (S.D.N.Y. Jan. 10, 2005), quoting Anostario v. Vicinanzo, 59 N.Y.2d 662, 664 (1983).  The "actions [of Plaintiffs] alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement."  Id.  The limits on a partial performance claim are "stringent" because "if the performance can be 'reasonably explained' by any other possible reason than the alleged oral modification, the performance is equivocal."  Blue Ridge, 2005 WL 44382, at *5.  Here, Plaintiffs' conduct and expenditures are explainable without reference to the oral contract they allege.  Indeed, the record is such that a reasonable juror could only find that Multi-Juice made those expenditures and commenced its operations pursuant to and in anticipation of finalizing the written distribution agreement, copies of which were exchanged by the parties for approximately six months in 1997 and 1998, without any material dispute on its terms other than the

11

provision for rights upon termination. See Multi-Juice, S.A. v. Snapple Bev. Corp., 2006 U.S. Dist. LEXIS 35928, at *8-9. Since Plaintiffs did not make a part performance claim earlier, the Court denies leave to amend their Complaint to include a part performance cause of action.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File a First Amended Complaint is denied.

IT IS SO ORDERED.

Dated: New York, New York
September 18, 2006

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

Counsel for Plaintiffs/Counterclaim Defendants

Law Office of Christopher J. Gray, P.C.
460 Park Avenue, 21st Floor
New York, NY 10022
By:   Christopher J. Gray
Tel:  212-838-3221
Fax:  212-937-3139

12

Counsel for Defendants/Counterclaim Plaintiffs

Mayer, Brown, Rowe and Maw
1675 Broadway
New York, NY 10019
By: Dennis P. Orr
Tel: 212-506-2690
Fax: 212-849-5690